

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

FEB 1 1 2004

Betty A. Griess, Clerk
Cheyenne

Bradley T. Cave, P.C.
Laura D. Windsor
HOLLAND & HART LLP
Post Office Box 1347
Cheyenne, Wyoming 82003
(303) 778-4200

ATTORNEYS FOR PLAINTIFF

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| H&R BLOCK TAX SERVICES and HRB ROYALTY, INC., | |
|---|---|
| Plaintiff, | |
| v. | Civil Action No. 09-CV-___49 D |
| WINTHROP E. (MIKE) DAILEY, LINE ONE, INC., | |
| Defendants. | |

### COMPLAINT

Plaintiffs H&R Block Tax Services ("Tax Services") and HRB Royalty, Inc.

("HRB Royalty") (collectively, "H&R Block") state the following for their Complaint

against defendant Winthrop E. (Mike) Dailey ("Dailey") and Line One, Inc.:

Receipt # 3C 1357
Summons:___X issued
_____not issued

## JURISDICTION AND VENUE

1.      Tax Services is a Missouri corporation having its principal place of business in the state of Missouri.  HRB Royalty is a Delaware corporation having its principal place of business in Nassau, Bahamas.

2.      On information and belief, Dailey is a citizen and resident of Wyoming.

3.      Line One, Inc. is a Wyoming corporation that operates two storefronts located at 984 W. Broadway, Jackson, Wyoming 83001, and 46B W. Third, Afton, Wyoming 83110.

4.      H&R Block seeks the following remedies against Dailey and Line One, Inc.:

a.      Preliminary and permanent injunctive relief requiring that Dailey, Line One, Inc., and persons in active concert or participation with him:

(i)      cease and refrain from the operation of any tax return preparation business in competition with H&R Block or its authorized, legitimate franchisees in or within 5 miles of the franchise areas in and around Afton, Wyoming or Jackson, Wyoming for a three-year period;

(ii)      deliver to H&R Block and refrain from using any originals or copies, whether stored by hard copy or electronically, of H&R Block proprietary information, which specifically includes any customer lists, customer tax files, H&R

2

Block tax preparation software, H&R Block training software, H&R Block training materials, and H&R Block business-tracking software (collectively, "Proprietary Information");

        (iii)     assign all Yellow and White Page telephone numbers for H&R BLOCK tax services for Afton and Jackson, Wyoming to H&R Block; and

        (iv)     identify by name, address and telephone number all persons and entities that may have received copies of any Proprietary Information, and provide such persons with a copy of the Court's order of injunction, directing them to deliver to H&R Block the Proprietary Information pursuant to the Court's order and refrain from further use or dissemination of the Proprietary Information;

        b.     Damages in an amount to be proved at trial for Dailey's breach of contract and Dailey's and Line One, Inc.'s misappropriation of trade secrets; and

        c.     Reasonable attorneys' fees and costs.

    5.     The amount in controversy in this matter exceeds $75,000, exclusive of interest and costs.

    6.     Complete diversity of citizenship exists among defendants and Dailey.

    7.     This Court has subject matter jurisdiction under 15 U.S.C. § 1051, *et seq.*, and 28 U.S.C. §§ 1331, 1332, 1338, and 1367.

8.     Venue is proper under 28 U.S.C. § 1391(b)(1), as Dailey resides in this district, and (b)(2), as the events giving rise to H&R Block's claims occurred in and continue to occur in this district.

## GENERAL ALLEGATIONS

9.     H&R Block is a franchisor of H&R BLOCK franchises for tax preparation services.

10.     H&R Block owns numerous United States registrations for the H&R BLOCK trademark, including the following:

| Reg. No. | Mark | Registration Date |
|----------|------|-------------------|
| 773,839 | H&R Block | July 21, 1964 |
| 1,270,198 | H&R Block | March 12, 1984 |
| 2,533,014 | H&R Block | January 22, 2002 |

11.     H&R Block spends millions of dollars each year marketing and promoting its goods and services under the H&R BLOCK trademark.  Due to extensive, long-standing, and continuous use, the H&R BLOCK trademark has acquired secondary meaning insofar as it enjoys wide recognition among the public.

12.     Years ago, H&R Block, Inc. entered into several major franchise agreements with Monte C. Nelson and Block Mountain West, Inc. ("Nelson/BMWI"), who are not parties to this case.  The major franchise agreements granted franchises to

4

Nelson/BMWI for the operation of H&R BLOCK tax preparation businesses in

particular geographic areas.  Two of the major franchise agreements covered Afton and

Jackson, Wyoming.

13.     H&R Block, Inc. assigned the major franchise agreements with

Nelson/BMWI to plaintiff HRB Royalty.

14.     The major franchise agreements authorized Nelson/BMWI to use H&R

BLOCK tax preparation materials, training materials, trademarks, trade names, and

other proprietary information provided by HRB Royalty, as assignee of H&R Block,

Inc., or its affiliates.

15.     HRB Royalty or its affiliates annually expended funds to purchase

advertising in the state of Wyoming for the benefit of Nelson/BMWI and their

subfranchises.

16.     As franchisees of HRB Royalty, Nelson/BMWI sold H&R BLOCK

subfranchises in the state of Wyoming.

17.     Defendant Dailey was a subfranchisee of Nelson/BMWI.

18.     Attached to the Complaint as Exhibit 1 is an agreement between

Nelson/BMWI, as franchisor, and Paula Holeman, as franchisee, granting Holeman a

subfranchise covering Jackson, Wyoming ("Jackson Subfranchisee Agreement").  Based

on a Line One, Inc. letter signed by Holeman, at some point Dailey became Holeman's

5

partner, and later Dailey purchased the entire Jackson subfranchise from Holeman.

Exhibit 2. The Jackson Subfranchise Agreement was assigned to, and is binding on,

Dailey. On information and belief, Nelson/BMWI, as franchisor, and Dailey, as

franchisee, entered into a substantively similar or identical agreement granting Dailey a

subfranchise for Afton, Wyoming ("Afton Subfranchisee Agreement") (collectively, the

Jackson Subfranchisee Agreement and the Afton Subfranchisee Agreement are referred

to as the "Subfranchisee Agreements").

19.    Nelson/BMWI, HRB Royalty, Tax Services, certain of their affiliates, and

others were parties to an action pending in the Circuit Court of Jackson County,

Missouri styled *Wm. R. Smith, et al. v. H&R Block, Inc., et al.*, Case No. 99-CV-206379

(the "Missouri Action"). The parties recently settled the case, and the claims and

counterclaims were dismissed with prejudice.

20.    By order of the Circuit Court of Jackson County, Missouri, the major

franchise agreement for Afton, Wyoming between HRB Royalty as franchisor and

BMWI as franchisee expired at midnight on June 30, 2003. The major franchise

agreement for Jackson, Wyoming between HRB Royalty as franchisor and Nelson as

franchisee expired on September 20, 2003.

21.    Simultaneously, the Subfranchise Agreements granted by Nelson/BMWI

as franchisor to Dailey as franchisee for Jackson and Afton, Wyoming expired.

6

22.    In the Jackson Subfranchise Agreement that, on information and belief, was assigned to Dailey, Dailey agreed not to compete with Nelson (and thus H&R Block) within 5 miles of the franchise area in and around Jackson for a period of three years after termination of the subfranchise agreements.  Exhibit 1 at ¶ 5.  Dailey also agreed in the Subfranchise Agreement that:

> for a period of three (3) years [following termination of the franchise and subfranchise] he will not divulge to or use for the benefit of any person, association, or corporation outside of the organization of [Nelson], any information or knowledge concerning customers, the methods, promotion [sic], advertising or any other systems or methods of operation of [Nelson's] business or that of [Nelson's] franchises which [Defendant] may have acquired by virtue of his operations under this agreement, nor will [Defendant] do any act prejudicial or injurious to the good will or name of [Nelson].

Ex. 1 at ¶ 5.  On information and belief, the Afton Subfranchise Agreement contains a substantively identical covenant not to compete clause.

23.    On September 17, 2003, Nelson/BMWI executed a Bill of Sale (Customer Lists, etc.), attached as Exhibit 3, which assigned to Tax Services "all customer lists, customer names, forms, files and copies of tax returns in the custody of [Nelson/BMWI or obtained in operating its business as a tax preparer under any and all of the Major Franchise Agreements between [Nelson/BMWI] and HRB Royalty, Inc. or any affiliate thereof, free and clear of all liens, mortgages, claims and encumbrances."

24.　On September 17, 2003, Nelson/BMWI executed a Bill of Sale, Assignment and Conveyance, attached as Exhibit 4, which transferred and delivered to Tax Services "all of the assets, properties, interests and rights of [Nelson/BMWI] which are specifically set forth on **Schedule A** attached hereto."  Schedule A attached to the Bill of Sale, Assignment and Conveyance lists the following assets, all transferred from Nelson/BMWI to Tax Services:

> 2.  All general, financial and personnel records, ledgers, sales invoices, accounts and payable records, files, forms, books, documents, correspondence, client tax returns, customer lists, employee lists (including addresses), sales records, FranTap data, TTS mailing lists and other files and records, including electronic versions of any of the foregoing, of Seller pertaining primarily or exclusively to Seller's operation of the business.

> 3.  All tangible property used by Seller primarily or exclusively with respect to Seller's operation of the Business, including but not limited to all supplies, equipment, inventory and office keys.

> 4.  All intellectual property used by Seller primarily or exclusively with respect to Seller's operation of the Business.

> * * *

> 6.  All rights Seller has to obtain all client files, client lists and other client data related to the operations of Seller's subfranchises, to the extent Seller has rights in such data.

25.    On September 17, 2003, Nelson/BMWI executed an Assignment of Satellite Franchise Agreement, attached as Exhibit 5, which transferred and assigned the Jackson Subfranchise Agreement to Tax Services.

26.    Dailey enjoyed all privileges and benefits of the Subfranchise Agreements until the Subfranchise Agreements and the major franchise agreements on which the Subfranchise Agreements were based expired on June 30, 2003 (Afton) and September 20, 2003 (Jackson).

27.    On December 4, 2003, H&R Block sent Dailey a letter, a copy of which is attached as Exhibit 6.  The letter states, *inter alia*,

> [H&R Block has] the right to enforce the post-termination rights of Nelsen with respect to the customer files and demand[s] that you immediately deliver to us the customer lists and customer tax returns of your former H&R Block business.  We will maintain the confidentiality of such files, which will be used solely to provide tax-related services to the H&R Block customers to whom the files relate.  We also demand that you comply with such other post-termination obligations of your subfranchise agreements with respect to competing with the Franchisor under such agreements.
>
> As a result of the expiration of your subfranchise agreements, you no longer have the right to continue using the H&R Block name.  We understand that the phone number used by you for your former H&R Block business is listed in the phone directory under the H&R Block name and such use, if continued, is prohibited by the subfranchise agreements and constitutes trademark infringement.  Therefore, we demand that you discontinue the use of such phone number and assign such number to us immediately.  We also demand that you discontinue using and surrender to

9

us immediately any H&R Block signs and other marketing materials bearing the H&R Block name.  Provide us with written assurance that any H&R Block signs for your former H&R Block business can no longer be seen by the public.

28.    Dailey has continued his tax preparation businesses in Afton and Jackson under the name Line One, Inc., using the same locations, telephone numbers, computers, customer files, customer lists, and customers' previous year's tax returns that were used until June 30, 2003 (Afton) and September 20, 2003 (Jackson) in his H&R BLOCK business.  Dailey is competing and plans to continue to compete in Afton and Jackson with H&R Block's licensed, legitimate franchisee for those locations.

29.    To that end, Dailey has run advertisements, sent solicitation letters, and maintained a website that lead consumers to believe that Line One, Inc. is authorized to perform H&R Block tax preparation services, and that H&R Block has undergone a name change.  The advertisements, letters and website include the following misleading and untrue statements:

- Line One, Inc. was "formerly H&R Block"

- "Your tax preparation firm has changed its name from H&R Block® to: **Line One, Inc .— The Tax Solution!"**

- Under the heading "What's the Same," stating:

  - "Staff"

  - "Same location"

10

- ▪ "Your prior years' records"

- "You know us . . . we've been here over 10 years"

- "Convenient!  We've got all your stuff"

30.    Dailey has violated the Subfranchise Agreements by failing to deliver the Proprietary Information to H&R Block.

31.    Dailey has further violated the Subfranchise Agreements by competing with H&R Block within 5 miles of the franchise areas in and around Afton and Jackson and within three years of termination of the Subfranchise Agreements and H&R Block's major franchise agreements with Nelson/BMWI.

32.    Customers in Afton and Jackson received tax preparation services from Dailey's H&R BLOCK franchises.  Their tax returns include the H&R BLOCK name and mark, and were in fact prepared by H&R Block.  Those customers reasonably expect that H&R Block will maintain the confidentiality and privacy of their customer files, tax returns, and confidential information, and will not allow others outside of H&R Block access to such information.

33.    Dailey and Line One, Inc. continue to use without permission the H&R BLOCK mark in formal advertising and otherwise to identify and promote Line One, Inc.'s tax preparation services.

11

## COUNT I – TRADEMARK INFRINGEMENT
## UNDER § 32 OF THE LANHAM ACT
### (AGAINST DAILEY AND LINE ONE, INC.)

34.     H&R Block incorporates in full the preceding paragraphs.

35.     H&R Block owns numerous valid and incontestable registrations issued by the PTO for H&R BLOCK.

36.     Dailey and Line One, Inc. have used, and are using, H&R Block's protected trademarks in commerce without the consent of H&R Block.

37.     The actions of Dailey and Line One, Inc. actions as described above, and specifically their unauthorized use of the H&R BLOCK mark to identify and promote tax preparation services, is likely to cause confusion, cause mistake, or deceive as to the affiliation, connection, or association of Dailey and Line One, Inc. with H&R Block, or as to the origin, sponsorship, or approval of Dailey's and Line One, Inc.'s services by H&R Block.  The conduct of Dailey and Line One, Inc. constitutes trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

38.     The trademark infringement by Dailey and Line One, Inc. has caused and continues to cause irreparable injury to the value and goodwill of H&R Block's trademarks, as well as irreparable injury to H&R Block's business, goodwill, and reputation.  H&R Block has no adequate remedy at law for this injury.

39.     The continued use of the H&R BLOCK trademarks by Dailey and Line One, Inc. is deliberate, willful, fraudulent, and constitutes a knowing infringement of H&R Block's trademarks.  H&R Block is entitled to disgorgement of Dailey's and Line One, Inc.'s profits, as well as attorneys' fees and costs incurred in this action, along with prejudgment interest.

### COUNT II – UNFAIR COMPETITION/TRADEMARK INFRINGEMENT UNDER § 43 OF THE LANHAM ACT
### (AGAINST DAILEY AND LINE ONE, INC.)

40.     H&R Block incorporates in full the preceding paragraphs.

41.     H&R Block possesses numerous valid and protectable trademarks.

42.     The actions of Dailey and Line One, Inc. as described above, and specifically their unauthorized use of the H&R BLOCK mark to identify and promote tax preparation services, is likely to cause confusion, cause mistake, or deceive as to the affiliation, connection, or association of Dailey and Line One, Inc. with H&R Block, or as to the origin, sponsorship, or approval of Dailey's and Line One, Inc.'s services by H&R Block.  The conduct of Dailey and Line One, Inc. constitutes unfair competition and trademark infringement in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a).

43.     Dailey's and Line One, Inc.'s trademark infringement has caused and continues to cause irreparable injury to the value and goodwill of H&R Block's

trademarks, as well as irreparable injury to H&R Block's business, goodwill, and reputation.  H&R Block has no adequate remedy at law for this injury.

44.     Dailey's and Line One, Inc.'s continued use of the H&R BLOCK trademarks is deliberate, willful, fraudulent, and constitutes a knowing infringement of H&R Block's trademarks.  H&R Block is entitled to disgorgement of Dailey's and Line One, Inc.'s profits, as well as attorneys' fees and costs incurred in this action, along with prejudgment interest.

## COUNT III – FALSE ADVERTISING
## UNDER § 43 OF THE LANHAM ACT
### (AGAINST DAILEY AND LINE ONE, INC.)

45.     The actions of Dailey and Line One, Inc. as described above, and specifically Dailey's and Line One, Inc.'s unauthorized use of the H&R BLOCK mark to identify and promote tax preparation services, constitute false or misleading statements concerning the affiliation, connection, or association of Dailey and Line One, Inc. with H&R Block, or the origin, sponsorship, or approval of Dailey's and Line One, Inc.'s services by H&R Block.

46.     The actions of Dailey and Line One, Inc. have deceived the intended audience concerning the affiliation, connection, or association of Dailey and Line One, Inc. with H&R Block, or the origin, sponsorship, or approval of Dailey's and Line One, Inc.'s services by H&R Block.  Alternatively, the actions of Dailey and Line One, Inc.

14

have the tendency to deceive a substantial portion of the intended audience concerning the affiliation, connection, or association of Dailey and Line One, Inc. with H&R Block, or the origin, sponsorship, or approval of Dailey's and Line One, Inc.'s services by H&R Block.

47.     Dailey's and Line One Inc.'s deception is material insofar as it is likely to influence the purchasing decisions of the deceived consumers.

48.     The tax preparation materials provided by H&R Block to Dailey and Line One, Inc. traveled in interstate commerce.

49.     The conduct of Dailey and Line One, Inc. constitutes trademark infringement in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a).

50.     Dailey's and Line One, Inc.'s false advertising has caused and continues to cause irreparable injury to the value and goodwill of H&R Block's trademarks, as well as irreparable injury to H&R Block's business, goodwill, and reputation.  H&R Block has no adequate remedy at law for this injury.

51.     Dailey's and Line One, Inc.'s continued false advertising is deliberate, willful, fraudulent, and constitutes a knowing infringement of H&R Block's trademarks. H&R Block is entitled to disgorgement of Dailey's profits, as well as attorneys' fees and costs incurred in this action, along with prejudgment interest.

## COUNT IV – BREACH OF CONTRACT
### (AGAINST DAILEY)

52.     Dailey entered into, or was successor in interest to, Subfranchise Agreements with Nelson/BMWI.

53.     Dailey and Nelson/BMWI intended the Subfranchise Agreements to be for the direct benefit of H&R Block and, consequently, H&R Block is a third party beneficiary of those contracts.

54.     Alternatively, H&R Block succeeded to the post-termination rights of Nelson/BMWI under the Subfranchise Agreements by reason of the Bill of Sale (Customer Lists, Etc.), attached as Exhibit 3, the Assignment and Conveyance, attached as Exhibit 4, and the Assignment of Satellite Franchise Agreement, attached as Exhibit 5.

55.     Dailey has breached the Subfranchise Agreements' covenant against competition, as set forth in Paragraph 5 of the Subfranchise Agreements.

56.     Dailey has breached the Subfranchise Agreements' covenant to refrain from use of certain information, as set forth in Paragraph 5 of the Subfranchise Agreements.

57.     Dailey's breaches have caused and/or will cause H&R Block injuries.

58.     H&R Block's injuries related to Dailey's breaches are not readily or fully compensable by an award of money damages.

16

59.     H&R Block is entitled to injunctive relief requiring Dailey to return to H&R Block the Proprietary Information and to refrain from competition for a period of three years within 5 miles of the franchises in and surrounding Afton and Jackson, Wyoming.

### COUNT V – UNJUST ENRICHMENT
#### (AGAINST DAILEY AND LINE ONE, INC.)

60.     Dailey and Line One, Inc. have received and will receive substantial benefits from the use of the Proprietary Information.

61.     Dailey and Line One, Inc. have been and will be unjustly enriched, at the expense of H&R Block, by the use of the Proprietary Information.

### COUNT VI – CONVERSION
#### (AGAINST DAILEY AND LINE ONE, INC.)

62.     H&R Block has legal title to its Proprietary Information.

63.     At all relevant times, H&R Block has had the right to possess its Proprietary Information.

64.     Dailey and Line One, Inc. have exercised dominion over H&R Block's Proprietary Information in a manner that has denied H&R Block its right to use the Proprietary Information for its economic benefit, or for the economic benefit of its franchisees and subfranchisees.

65.     In its December 4, 2003 letter attached as Exhibit 6, H&R Block demanded that Dailey return H&R Block's Proprietary Information.  Nevertheless, Dailey and Line One, Inc. have not returned H&R Block's Proprietary Information.

66.     The conversion of H&R Block's Proprietary Information by Dailey and Line One, Inc. constitutes outrageous and/or willful and wanton misconduct, and Dailey and Line One, Inc. have wrongfully profited from their misconduct.

67.     The economic benefit of the Proprietary Information is greatest for the preparation of tax returns during the tax season (the months of January, February, March, and April).  During the tax season, Dailey's and Line One, Inc.'s access – and H&R Block's lack of access – to the Proprietary Information will cause injury to H&R Block, which is not fully or readily compensable by an award of money damages.

68.     H&R Block is entitled to the remedy of injunction against Dailey's and Line One, Inc.'s conversion of the Proprietary Information.  In the alternative, H&R Block is entitled to damages, including punitive damages, in addition to or in lieu of injunctive relief.

## COUNT VII – TORTIOUS INTERFERENCE WITH CONTRACT OR PROSPECTIVE BUSINESS ADVANTAGE
### (AGAINST DAILEY AND LINE ONE, INC.)

69.     H&R Block had a valid contractual relationship with the customers for whom Dailey, operating as a subfranchisee of H&R Block, previously provided tax-

18

related services.  Alternatively, H&R Block had a valid expectancy that the customers

for whom Dailey, operating as a subfranchisee of H&R Block, previously provided tax-

related services, would continue to obtain tax-related services from H&R Block, its

franchisees, and subfranchisees.

70.     Dailey and Line One, Inc. had knowledge of H&R Block's valid

contractual relationships and/or H&R Block's valid business expectancy.

71.     Dailey and Line One, Inc. have intentionally and improperly interfered

with H&R Block's valid contractual relationships and/or its valid business expectancy

by causing H&R Block customers to obtain tax-related services from Dailey and Line

One, Inc.

72.     Dailey's and Line One, Inc.'s improper interference constitutes

outrageous and/or willful and wanton misconduct, and Dailey and Line One, Inc. have

wrongfully profited from their misconduct.

73.     The improper interference by Dailey and Line One, Inc. has caused

and/or will cause H&R Block injuries.

74.     H&R Block's injuries related to Dailey's and Line One, Inc.'s improper

interference are not readily or fully compensable by an award of money damages.

75.     H&R Block is entitled to the remedy of injunction against Dailey's and

Line One, Inc.'s actual and/or threatened improper interference.  In the alternative,

H&R Block is entitled to damages, including punitive damages, in addition to or in lieu of injunctive relief.

### COUNT VIII – COMMON LAW UNFAIR COMPETITION
#### (AGAINST DAILEY AND LINE ONE, INC.)

76.   H&R Block possesses numerous valid and protectable trademarks.

77.   Dailey's and Line One, Inc.'s actions as described above, and specifically Dailey's and Line One Inc.'s unauthorized use of the H&R BLOCK mark to identify and promote Line One, Inc.'s tax preparation services, is likely to cause confusion, cause mistake, or deceive as to the affiliation, connection, or association of Dailey and Line One, Inc. with H&R Block, or as to the origin, sponsorship, or approval of Dailey's and Line One, Inc.'s services by H&R Block.  The conduct of Dailey and Line One, Inc. constitutes unfair competition.

78.   Dailey's and Line One, Inc.'s unfair competition has caused and continues to cause irreparable injury to the value and goodwill of H&R Block's trademarks, as well as irreparable injury to H&R Block's business, goodwill, and reputation.  H&R Block has no adequate remedy at law for this injury.

79.   The continued use of the H&R BLOCK trademarks by Dailey and Line One, Inc. is deliberate, willful, fraudulent, and constitutes a knowing infringement of H&R Block's trademarks.  H&R Block is entitled to disgorgement of Dailey's and Line

One, Inc.'s profits, as well as attorneys' fees and costs incurred in this action, along with prejudgment interest.

## COUNT IX – VIOLATION OF WYOMING CONSUMER PROTECTION ACT WYOM. STATE ANN. § 40-12-101 ET SEQ.
### (AGAINST DAILEY AND LINE ONE, INC.)

80. The actions of Dailey and Line One, Inc., as described above, and specifically Dailey's and Line One, Inc.'s unauthorized use of the H&R BLOCK mark to identify and promote tax preparation services, constitute a deceptive trade practice because it represents that Dailey's and Line One, Inc.'s tax services are affiliated, connected, or associated with H&R Block, or are sponsored or approved by H&R Block.

81. H&R Block gave notice to Dailey and Line One, Inc. of their unlawful deceptive trade practice, and the damages that would continue to be suffered by H&R Block if Dailey's and Line One, Inc.'s unlawful deceptive trade practices continued.

82. The deceptive trade practice of Dailey and Line One, Inc. has caused and/or will cause H&R Block injuries.

83. H&R Block's injuries related to Dailey's and Line One, Inc.'s deceptive trade practice are not readily or fully compensable by an award of money damages.

84.     H&R Block is entitled to the remedy of injunction against the deceptive trade practice of Dailey and Line One, Inc.  In the alternative, H&R Block is entitled to damages in addition to or in lieu of injunctive relief.

WHEREFORE, HRB Royalty, Inc. and H&R Block Tax Services request the following relief:

(1) the entry of a temporary restraining order and a preliminary injunction that Dailey and Line One, Inc.:

(a)     cease and refrain from the operation of any tax return preparation business in competition with H&R Block or its authorized, legitimate franchisees in or within 5 miles of the franchise area in and around Afton, Wyoming or Jackson, Wyoming for a three-year period;

(b)     deliver to H&R Block and refrain from using any originals or copies, whether stored by hard copy or electronically, of the Proprietary Information;

(d)     assign all Yellow and White Page telephone numbers for H&R BLOCK tax services for Afton and Jackson, Wyoming to H&R Block; and

(e) identify by name, address and telephone number all persons and entities that may have received copies of any Proprietary Information, and provide such persons with a copy of the Court's order of injunction, directing them to deliver to H&R Block

the Proprietary Information pursuant to the Court's order and refrain from further use or dissemination of the Proprietary Information;

(2) Damages for Dailey's breach of contract, to the extent H&R Block's damages can be remedied by monetary relief;

(3) Damages for Dailey's and Line One, Inc.'s conversion and misappropriation of trade secrets, unfair competition, violations of the Lanham Act, violation of the Wyoming Consumer Protection Act, and tortious interference with contract or prospective business advantage, to the extent H&R Block's damages can be remedied by monetary relief;

(3) Punitive damages;

(4) Reasonable attorneys' fees and costs;

(5) Prejudgment interest; and

(6) Such other relief as deemed appropriate by the Court.

Dated:  February _11_, 2004.

_Bradley Cave_ (signature)

Bradley T. Cave, P.C.
Laura D. Windsor
HOLLAND & HART L.L.P.
Post Office Box 1347
Cheyenne, Wyoming 82003

**ATTORNEYS FOR PLAINTIFF**

Plaintiffs' Addresses:

H&R Block Tax Services
4400 Main Street
Kansas City, MO  64111

HRB Royalty, Inc.
Suite 101
TK House
Bayside Executive Park
West Bay Street and Blake Road
P. O. Box N-8220
Nassau, Bahamas


3172757_5.DOC

# EXHIBIT #1

A G R E E M E N T

THIS AGREEMENT made and entered into by and between _Income Tax Service_

_Inc. ( A Wyp. Corp)_, first party, and _Paula Holeman_

_Paula Holeman_, second party.

W I T N E S S E T H :

WHEREAS, first party is engaged in the business of doing income tax

service for the general public.

WHEREAS, first party is in the business of franchising a service

dealing exclusively with the preparation of income tax returns and related

services and is the licensee of trademarks, systems, relating to this service.

WHEREAS, second party, in consideration of the covenants and agree-

ments hereafter set forth, desires to operate such a service as that which is

being franchised by first party.

1.  First party hereby agrees:

(a)  To grant second party a franchise to engage in the
business of preparing tax returns and performing related
services within _____Jackson, Wyoming_____.

(b)  To refrain from competing with second party during the
term of this agreement within said area.

(c)  To permit second party to operate under a name
specified by first party.  The use of any other name in
connection with the preparation of tax returns by second
party is expressly prohibited.  First party reserves the
right to change at any time the name under which second
party must operate.

(d)  To explain fully and to instruct second party in the
operational details of the business, in consideration
wherefore second party agrees to spend five (5) days in
Salt Lake City during November or December.

(e)  To advise second party in the selection and location
of an office or offices.

- 2 -

(f)  To furnish second party with information necessary to
establish an operating budget.

(.·  To furnish second party with all specialized forms and
equipment (not required by the normal accounting business
office) deemed necessary by the first party for the second
party to operate the business.  Any equipment or supplies
will be furnished F.O.B. point of origin and installed and
maintained in good working condition by second party.
Should this contract be terminated the equipment furnished
and the remaining supplies will be returned to the first
party in good condition as received, less normal wear and
tear, by second party.  At the option of the first party
the specialized equipment will be provided for by the use
of processing returns at Salt Lake City or any other
centralized processing center if in the sole opinion of the
first party the second party can be served better by such
centralized processing.  In such event the second party
agrees to follow the policy of preparing the return,
completely in every detail, mailing returns, by means
specified by the first party to the processing center
designated.  First party on such election agrees to process
returns and mail postage prepaid direct to the customer or
back to the second party.

(g-1)  Specialized equipment expressly does not include
desks, chairs, office, adding machines, adding tapes,
pencils, erasures, electric power, gas, heat for office,
light fixtures, postage out directly to customers (except
in G above) typewriters, but refers to equipment peculiar
to the processing of forms of the first party in a manner
conforming to the policy and procedure of the first party.
Further clarifications of such supplies furnished by first
party are those so specified on P & P 904 dated 1965--
October, a copy of which is herewith attached as Exhibit
"A".

(h)  To train employees of second party in the matter of
preparing returns, customer relation and procedures of the
first party, provided that such training shall take place
in Salt Lake City only at a time designated by first party.

(i)  To furnish and pay for all promotion and advertising
deemed advisable by first party in the sole discretion of
first party.

(j)  To assist second party in tax and management

- 3 -

which may arise during the period of this agreement.

2. Second party hereby agrees:

(a) To operate under this agreement a tax return business under a name specified by first party and first party may change the name at any time by giving second party written notice of the change.

(b) To prepare quality returns accurate to the best of second party's knowledge and to cause same to be checked thoroughly before they shall be returned to clients.

(c) To maintain office hours from 9 a.m. to _____ p.m. during week days and 9 a.m. to 5 p.m. on Saturdays during the tax season, to-wit: at least the first Monday after January 1 through April 15, second party's office or offices to be neat and orderly at all times and with sufficient personnel to accommodate all clients without undue delay. To maintain office hours of at least 9 to 5 Monday through Friday, April 16 through December 31, unless otherwise approved in writing by first party. Also on Sunday 9 a.m. to 5 p.m. during the tax season unless otherwise approved in writing by first party.

(d) To allow a minimum of 40 hours per week year round to supervise properly and efficiently. The supervision must be actual supervision by second party.

(e) To furnish first party with duplicate copies of receipts of all funds received from the preparation of income tax returns and relate services during the period of this agreement, within the franchise area, such copies to be sent to first party semi-monthly together with recap sheets in duplicate, second party's books and records to be open to inspection by first party or his representatives at all times.

(f)  ⁻.    .To indemnify and save harmless the first party,

(g)  ·        To indemnify and save harmless the first party, from  any and all liability, damage, expense, cause of action, suit, claim or judgments arising from injury to persons or property which arise out of the act, failure to act or negligence of second party, his agents or employees. Second party agrees

- 4 -

.to carry insurance in a reasonable amount which has been
approved by first party to carry out the provisions of this
subparagraph.  In the event second party leases or otherwise
in any way becomes responsible for any building second party
agrees that he will at his expense keep in effect upon said
buildings and improvements pertaining thereto fire insurance
written by a responsible insurance company authorized to do
insurance business in the State___Wyoming_____in an amount
equal to not less than the insurable value of the building
and improvements.

(h)  To generally manage and conduct the business in
accordance with the rules and regulations set forth in the
POLICY AND PROCEDURE MANUAL issued by first party, together
with any additional policy set forth by first party or which
may from time to time be set forth, a copy of which shall
be furnished to second party.  First party specifically
reserves unto itself the right to alter, change and amend
such rules and regulations when in said first party's
discretion such amendments would be beneficial to the
business of the parties hereto.  A copy of such amendments
shall be furnished to each person operating a franchise
under the POLICY AND PROCEDURE MANUAL, whether with first
party or with any other legal entity, who shall have the
right to veto any policy and procedure amendment provided
two-thirds of those so operating inform first party in
writing within 30 days after the amendments are mailed by
first party.  It is agreed that violation or violations of
the Policy and Procedure Manual by second party shall not
constitute a breach hereof unless same is material and
substantial in nature or unless same has not been corrected
by second party within 15 days after receipt of notice as
hereinafter provided.  It is expressly agreed, however, that
the 15-day notice in and of itself is grounds for first
party to take action to cancel the franchise for breach of
policy and procedure.  This shall in no way effect or delay
first party's right of cancellation.

(i)  To be responsible to see that all persons who are
informed or trained about the first party's system signs an
agreement contract form wherein they agree not to use the
knowledge in competition against the first party or the
second party under penalty for a period of at least two
years, properly witnessed and forwarded to first party.
First party will furnish the second party the form to use.
In the event the second party fails to do so and first party
suffers a loss due to this negligence the second party
agrees to reimburse to the first party his loss sustained
by such negligence.

(j)  To comply with the provisions of the ???
paragraph 1 above as they apply to second

- 5 -

3. Firstand second parties hereby agree:

(a)   That they are not and shall not be construed as joint venturers, partners or agents of each other, that second party shall not have any power to bind or obligate first party and that the latter shall not be liable to any person whomsoever for any debts incurred by second party individually or as owner of the business conducted by him.

(b)   That all books, records, customer lists, customer names, forms and files in second party's custody shall be and remain at all times the property of second party, provided however, that in the event of termination of this agreement for any reason whatsoever such title thereto shall be forfeited and shall vest in first party.  In the event of such forfeited second party shall immediately deliver to first party all such books, records, customer lists and customer names and further shall assign whatever right, title or interest second party may have in and to all leases covering equipment or real property then used in connection with the operation of second party's business under this franchise contract as first party may require upon first party's consent in writing to assume payment of rental thereon.  First party shall have the sole right and privilege to use any information appearing on file copies of customer tax returns, limited to a useful purpose, respecting the confidential nature of such information.  Second party may use said information solely in the preparation of subsequent years tax returns.

(c)   That if any covenant or other provision herein shall be determined to be invalid, illegal or incapable of being enforced by reason of any rule or law or public policy, all other conditions and provisions of this agreement shall nevertheless remain in full force and effect and no covenant or provision of the agreement shall be deemed to be dependent upon any other unless so expressed herein.

(d)   That second party, his heirs or assigns may sell, assign or transfer all or any part of this franchise at any time to an individual or individuals (but not to a corporation), provided however, that any proposed transfer must be submitted to, and approved and accepted by, first party (which approval it shall not unreasonably withhold) and any attempted disposition shall not take effect unless and until such acceptability and approval shall be evidenced

- 6 -

by an instrument in writing executed by first party. It is expressly stipulated, however, that second party may delegate his rights to operate hereunder to a corporation without the necessity of procuring first party's consent thereto provided written notice of such action is afforded to first party. Any such delegation to a corporation of the license to operate under this franchise agreement shall in no way relieve second party of any individual liability hereunder and first party shall continue at all times to look to second party individually for the proper performance hereof, the provisions as to termination and forfeiture to apply as to any material breach hereof committed by second party, the licensee corporation, or any agent of either, second party, in such event, shall also remain fully bound individually by the personal supervision and non-competitive provisions hereof to the same extent and for the same duration as he would have been bound had he continued to operate individually hereunder. Under no circumstances shall any corporation be construed at any time as owner of this franchise.

Upon approval of a transfer second party, his licensee corporations and/or his assigns shall not thereafter compete, directly or indirectly, with first party or the franchises of either for a period of three (3) years within the franchise area or five miles thereof.

(e)  That the term of this agreement shall run for a period of five (5) years from the date hereof with further provisions that it shall be automatically renewed for successive periods of five (5) years each unless terminated by serving written notice of intention to cancel on the other party not less than 120 days prior to an anniversary date, provided however, that first party shall be entitled to cancel only for reasonable cause after first affording to second party the notice hereinafter provided (see 3g) and second party's failure to correct the alleged breach or violation within fifteen (15) days from receipt of such notice. The parties hereto expressly stipulate that this agreement being personal in nature shall terminate automatically upon second party's death or incapacity (defined herein as his inability or unfirmness, according to competent medical authority, to perform the duties and obligations under this agreement for a period of one (1) year or more as the result of illness or accident), provided however, that in such event second party or his legal representative shall have a ninety (90)

- 7 -

day grace period during which to sell, assign or transfer
in accordance with paragraph 3d.  Should first party refuse
to approve the first proposed transferee said grace period
shall be extended from ninety (90) days to one hundred
twenty (120) days.  First party shall afford second party a
determination in writing within thirty (30) days after
receipt of the name of a proposed transferee.  Should second
party become incapacitated, ill or in any way unable to
carry out his duties of management of this franchise during
any tax season the first party shall have the right to come
in and manage or cause to hire to manage said business,
including the use of all premise and facilities owned or
used by second party, through the end of the tax season on
a fee basis chargeable to the second party only.

(f)  That the failure of either party hereto to enforce at
any time or for any period of time any one or more of the
terms or conditions of this agreement shall not be deemed a
waiver of such terms or conditions or of either party's
rights thereafter to enforce each and every term and condi-
tion of this agreement.  This agreement expresses fully the
understanding by and between the parties hereto.  Time shall
be of the essence.  This agreement shall be construed
according to the laws of the State of Utah.

(g)  Any material breach of the terms hereof by second party
shall constitute grounds for termination of this agreement.
Prior to such termination first party shall give second
party written notice of the alleged breach by certified
mail, whereupon second party shall have fifteen (15) days
from receipt of such notice to correct the same.

(h)  That this instrument shall be binding upon and inure
to the benefit of the parties hereto, their successors,
assigns, heirs, executors, administrators and legal repre-
sentatives (except as otherwise provided herein)

4.  In consideration of the foregoing second party agrees to pay
first party a sum equal to ____45%____ of the gross receipts
received by second party from the preparation of tax returns or
related services.  Reports of such receipts through the 15th and
last day of each month shall be submitted to first party within five
days after the end of such respective periods.  Payment shall be due
within 30 days after each report period.

     (a)  If payment, however, is made within five days
          after a report period and if all previous payments

- 8 -

have been made a discount of ten percentage points from established rate shall be allowed. For example, for the first half of January of the first year, if payment is remitted by January 20, only __35%__ __ __ is due. Otherwise __45%__ must be paid by February 15.

(b)  For any year in which such gross receipts exceed $ __5,000.00__ the __45%__ __ __ fee shall be applicable only to the first $ 5,000.00 __, gross receipts and the franchise fee on the excess shall be __40%__, subject to the discount provision hereinabove provided. (See 4a).

5.  Second party expressly acknowledges that the use of any name other than that specified by first party in conducting the business of this franchise is strictly prohibited, that he shall not permit any other venture to materially interfere in any way with the operation of the franchise herein granted and that he shall not permit the name specified by first party or any substantially similar style or spelling to be used for any other purpose, including but not limited to the formation of business associations or corporations without the express written permission of first party. Further, second party covenants that he will not compete, directly or indirectly, with first party in the business of tax return preparation or related services during the term hereof and for a period of three (3) years after its termination or expiration within the franchise area or five miles thereof. The term "related services" as used in this agreement shall be construed to include any product or service instituted, organized and sponsored or promoted by first party, or any of its affiliated companies, and shall further include any activity undertaken under the name specified by first party. Second party further covenants that during the term of this agreement and for a term of three (3) years thereafter he will not divulge to or use for the benefit of any person, association or corporation outside of the organization of first party, any information or knowledge concerning customers, the methods, promotion, advertising or any other systems or methods of operation of first party's business or that of first party's franchises which second party may have acquired by virtue of his operations under this agreement, nor will second party do any act prejudicial or injurious to the good will or name of first party. Information furnished to employees shall be reasonably limited to that which directly relates to such employees duties. This agreement is entered into between the parties hereto with the full knowledge of its nature and extent and agreed to by the second party and the second party hereby acknowledges that the qualifications for a franchise by the first party are special, unique and extraordinary and that this agreement would not be entered into by the first party except upon condition that such special

- 9 -

covenants be embodied herein and as such enforceable in the event
of a breach by the second party.

6. Both parties agree to perform this agreement faithfully at all
times. If, however, this agreement be terminated due to second
party's breach of any provision herein, second party shall pay to
first party a reasonable sum for damages incurred thereby in addi-
tion to any other amount second party may owe first party. Such
damages shall be cumulative. First party acknowledges receipt of
the sum of __Three hundred & no/100_____($_300.00___)
DOLLARS as a good faith deposit to be applied to said damages in the
event of any breach hereunder by second party, or within three (3)
years of the termination of this agreement, otherwise such deposit
to be refunded three (3) years after termination of this contract.

7. If for any reason the franchise rights of Monte C. Nelson or his
successors under H & R Block, Inc. should be terminated while this
agreement is of full force and effect, this agreement shall likewise
terminate simultaneously therewith at the sole election of first
party. Should first party elect to cancel it must be done by
serving notice upon second party within 30 days of the cancellation
of Monte C. Nelson or his successors. Otherwise, this agreement is
to remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands
and seals this __20th day of __September_____, 1980.

_____
First Party

_____
Second Party

# EXHIBIT #2

FROM :                          FAX NO. :                    May. 21 2002 11:31AM  P2



January 28, 2004

Dear Friends:



Each of you receiving this letter was a client of mine last tax season and for some of you we go back for some twenty plus years. Over those years we came to know each other very well.

tax
accounting
payroll
employee leasing

307 733 2408
fax 307 733 8891
www.lineoneinc.com

984 west broadway
p.o. box 4485
jackson, wy 83001

For the past six years I have been employed by the Senior Center of Jackson Hole as the case manager for their Community Based In-Home Services. It is a wonderful place to work and you get to meet a lot of the valley's pioneers. Then during tax seasons I would prepare taxes four evenings a week and Saturdays. I would look forward to seeing you again and visiting about what had been going on in your lives.

As I am not getting any younger I feel that I cannot work both jobs and do as good a job at both as I want. So last year was my final season preparing tax returns.

When I owned the H&R Block franchise Mike Dailey worked for me for six years and then we went into partnership together for three years. After that I sold my half of the H&R Block franchise to him and began working for him part time during the last six years. Mike did a great job of taking over the reins and keeping everything running smoothly.

Mike has changed the name of his firm to Line One – The TAX Solution. However it is still the same people that have worked there. Mike Dailey has 16 years experience preparing tax returns and his associate Dave Cohen has 27 years experience. They are well qualified to prepare all different types to tax returns. They will help you look for all your deductions and credits so you will have the lowest tax liability to which you are entitled. They still provide electronic filing and the different bank products if that is of importance to you.

I will miss seeing you and I wish you all the best.

May God bless you.

Paula Holeman

# EXHIBIT #3

## BILL OF SALE
### (Customer Lists, Etc.)

KNOW ALL MEN BY THESE PRESENTS:

THAT Block Mountain West, Inc., H&R Block of Idaho, Inc., H&R Block of Utah, Inc., Income Tax Services, Inc., and Block Management, Inc. (Collectively "Seller"), for and in consideration of the payment made September 22, 2003 by H&R Block Eastern Tax Services, Inc. ("Buyer") to Seller, and such further payments by Buyer to Seller as may come due in the future, and other good and valuable considerations, the receipt of which is hereby acknowledged, does hereby bargain, sell, grant, convey, assign, transfer and deliver unto Buyer, its successors and assigns forever all customer lists, customer names, forms, files and copies of tax returns in the custody of Seller or obtained in operating its businesses as a tax preparer under any and all of the Major Franchise Agreements between Seller and HRB Royalty, Inc. or any affiliate thereof, free and clear of all liens, mortgages, claims and encumbrances.

Seller hereby warrants and represents that it has good and marketable title to all of the property and assets to be transferred hereunder.

Except for the foregoing, Buyer acknowledges that the transfer is made without representation or warranty (express or implied) by Seller. The Assets are being transferred "AS IS." Buyer acknowledges it has made its own due diligence with respect to the Assets being acquired and the employees of Seller being hired, and Buyer is not relying on any representation or warranty of Seller.

TO HAVE AND TO HOLD the same unto the said H&R Block Eastern Tax Services, Inc. and unto its successors and assigns forever.

IN WITNESS WHEREOF, this instrument is signed on the _17_ day of _Sept._, 2003.

BLOCK MOUNTAIN WEST, INC., H&R BLOCK OF IDAHO, INC., H&R BLOCK OF UTAH, INC., INCOME TAX SERVICES INC., AND BLOCK MANAGEMENT, INC.

By: _Mnute Nelson_

# EXHIBIT #4

# BILL OF SALE, ASSIGNMENT AND CONVEYANCE

THIS BILL OF SALE, ASSIGNMENT AND CONVEYANCE is made as of the 22nd day of September, 2003 (the "Effective Date"), by and among Block Mountain West, Inc., H&R Block of Idaho, Inc., H&R Block of Utah, Inc., Income Tax Services, Inc., and Block Management, Inc. (collectively "Assignor" or "Seller") having an address of 380 E. Main Street, Building B, Midway, Utah 84049 and H&R Block Eastern Tax Services, Inc. ("Buyer") having a notice address of 4400 Main Street, Kansas City, Missouri 64111.

**WITNESSETH:**

**WHEREAS,** the Seller desires to sell, and the Buyer desires to purchase, certain assets of the Seller pursuant to the terms and conditions set forth herein.

**NOW, THEREFORE,** the parties hereto agree as follows:

1.     The Seller, for and in consideration of the September 22, 2003 payment by Buyer to Seller and such further payments by Buyer to Seller as may become due in the future, does, as of the Effective Date, grant, bargain, sell, convey, assign, transfer, set over and deliver unto the Buyer, all right, title and interest of the Seller in and to all of the assets, properties, interests and rights of the Seller which are specifically set forth on **Schedule A** attached hereto and made a part hereof (collectively, the "Assets").

2.     Seller acknowledges that this Bill of Sale, Assignment and Conveyance is limited to the Assets hereinafter specifically set forth, and it is the intention of the parties that Buyer shall not assume any liabilities of the Seller.

3.     Seller represents that it has full and complete title and ownership of said Assets, has the right and authority to transfer said Assets to Buyer, and that such Assets will be transferred to the Buyer on the Effective Date free and clear of liens, security interests, debts or other encumbrances.

4.     The Seller further represents that it will at any time and from time to time after the Effective Date, upon the request of the Buyer, execute, acknowledge, deliver and perform, or cause to be executed, delivered, or performed, all such further acts, deeds, assignments, transfers, conveyances, powers of attorney and assurances as may be required for the better vesting and confirming unto the Buyer of the title to and possession of any and all of the Assets acquired by the Buyer from the Seller hereunder.

5.     Except for the foregoing, Buyer acknowledges that the transfer is made without representation or warranty (express or implied) by Seller. The Assets are being transferred "AS IS." Buyer acknowledges it has made its own due diligence with respect to the Assets being acquired and the employees of Seller being hired. and Buyer is not relying on any representation or warranty of Seller.

6.     Seller acknowledges that the September 22, 2003 payment by Buyer to Seller, referred to in Section 1 hereof, does not jeopardize Buyer's rights to verify the numbers supplied by Seller, which Buyer relied upon to calculate the amount of the payment, and make adjustments to the payment based on such verification process.  Buyer acknowledges that the September 22, 2003 payment by Buyer to Seller, referred to in Section 1 hereof, does not jeopardize Seller's rights to claim and receive payment for the fair and equitable value of the business of Seller being transferred to Buyer pursuant to Paragraph 24 of the Major Franchise Agreements between Seller and Block, and the Order of the Circuit Court of Jackson County, Missouri, in Case No. 99 CV 206379 dated June 3, 2003.

7.     Upon request, Buyer agrees to provide to Seller after the Effective Date copies of all documents, records, and information assigned pursuant hereto upon reasonable notice provided such requests are for legitimate business purposes of Seller.  Upon request, Seller agrees to provide to Buyer after the Effective Date copies of Seller's documents, records, and information that relate to the business operated under the above-referenced Major Franchise Agreements upon reasonable notice, provided such requests are for legitimate business purposes of Buyer.

8.     The parties acknowledge that the amount included in the September 22, 2003 payment is an estimate, and the parties agree that the September 22, 2003 payment shall be adjusted, up or down, after the date hereof as final information becomes available.

**IN WITNESS WHEREOF,** the Seller has executed this Bill of Sale, Assignment and Conveyance as of the date first written.

SELLER:

BLOCK MOUNTAIN WEST, INC., H&R BLOCK OF IDAHO, INC., H&R BLOCK OF UTAH, INC., INCOME TAX SERVICES, INC., AND BLOCK MANAGEMENT, INC.

By: _Martine Nelson_

BUYER:

H&R BLOCK EASTERN TAX SERVICES, INC.

By: _____

Title: Senior Vice President

## SCHEDULE A

List of Assets

1.    All real estate lease agreements to which to the Seller is a party and which relate primarily or exclusively to Seller's operation of an income tax preparation (and related services) business (the "Business").

2.    All general, financial and personnel records, ledgers, sales invoices, accounts and payable records, files, forms, books, documents, correspondence, client tax returns, customer lists, employee lists (including addresses), sales records, FranTap data, TTS mailing lists and other files and records, including electronic versions of any of the foregoing, of Seller pertaining primarily or exclusively to Seller's operation of the Business.

3.    All tangible property used by Seller primarily or exclusively with respect to Seller's operation of the Business, including, but not limited to all supplies, equipment, inventory and office keys.

4.    All intellectual property used by Seller primarily or exclusively with respect to Seller's operation of the Business.

5.    All tax professional employment agreements to which Seller is a party for the past two (2) tax seasons.

6.    All rights Seller has to obtain all client files, client lists and other client data related to the operations of Seller's subfranchises, to the extent Seller has rights in such data.

# EXHIBIT
# #5

## ASSIGNMENT OF SATELLITE

## FRANCHISE AGREEMENT

FOR VALUE RECEIVED, Income Tax Service, Inc. for good and valuable consideration, does hereby sell, assign, and transfer to H&R Block Eastern Tax Services, Inc. all rights of the Assignor and delegates to such Assignee all of the duties of the Assignor under a certain Satellite Franchise Agreement, dated unknown, between the Assignor and Paula Holeman, a true copy of which is annexed hereto and made a part hereof.

IN WITNESS WHEREOF, this instrument is signed on the 17 day of Sept, 2003.

ASSIGNOR:

INCOME TAX SERVICE, INC.

By: _____

# EXHIBIT #6

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

| | | |
|---|---|---|
| Postage | $ | |
| Certified Fee | | |
| Return Receipt Fee (Endorsement Required) | | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | |

Sent To    Mike Dailey

Street, Apt. No.; or PO Box No.    30 Redmond

City, State, ZIP+4    Jackson, WY  83001

PS Form 3800, January 2001          See Reverse for Instructions

7002 1410 0002 9025 8046



**H&R BLOCK**

tax and financial services

Steven A. Christiansen
Vice President
Corporate Counsel & Secretary

December 4, 2003

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

Mr. Mike Dailey
30 Redmond
Jackson, Wyoming  83001

Dear Mr. Dailey:

In September 2003, H&R Block's major franchise agreements with the Nelsen organization ("Nelsen") expired due to non-renewal.  As a result, Nelsen no longer has the right to operate an income tax service under the H&R Block name.

You have subfranchise agreements with Nelsen by which Nelsen granted you the right to operate an H&R Block income tax service in Jackson, Wyoming, and Afton, Wyoming, under one or more of Nelsen's major franchise agreements.  While Nelsen has assigned to H&R Block certain assets of its former H&R Block business, H&R Block has made it clear to counsel for Nelsen that H&R Block has no obligation to, and will not, acquire or assume any obligation of "franchisor" under any of Nelsen's subfranchise agreements.  As a result, your subfranchise agreements have expired by operation of law upon the expiration of Nelsen's underlying major franchise agreements, and we have no obligation to you under your subfranchise agreements, including, without limitation, any obligation to make any payment to you which Nelsen may have agreed to make upon termination of your subfranchise agreements.

H&R Block has offered you the opportunity to enter into a direct franchise agreement with H&R Block under its current form of franchise agreement that was tendered to you.  You did not accept that offer and the time for your acceptance has expired.  We understand that you have made plans to continue to operate an income tax service in your former H&R Block territories and that, among other things, you have retained the customer files and phone number used for your former H&R Block business which we anticipate that you intend to use for a competing tax service.

Your subfranchise agreements with Nelsen contain a provision that requires you, upon termination of such agreements, to transfer to Nelsen the customer lists and files for the business of the franchise.  Such provision may refer to receipt of a payment from Nelsen.  However, it appears that Nelsen's payment obligation, if any, does not apply in the event Nelsen's right to use the H&R Block name is terminated.  Nelsen's assignment of assets to H&R Block includes,

Mr. Mike Dailey
December 4, 2003
Page 2

without limitation, all of Nelsen's right to obtain client files and client lists related to the operation of Nelsen's subfranchises. Therefore, we have a right to enforce the post-termination rights of Nelsen with respect to the customer files and demand that you immediately deliver to us the customer lists and customer tax returns of your former H&R Block business. We will maintain the confidentiality of such files, which will be used solely to provide tax-related services to the H&R Block customers to whom the files relate. We also demand that you comply with such other post-termination obligations of your subfranchise agreements with respect to competing with the Franchisor under such agreements.

As a result of the expiration of your subfranchise agreements, you no longer have the right to continue using the H&R Block name. We understand that the phone number used by you for your former H&R Block business is listed in the phone directory under the H&R Block name and such use, if continued, is prohibited by the subfranchise agreements and constitutes trademark infringement. Therefore, we demand that you discontinue the use of such phone number and assign such number to us immediately. We also demand that you discontinue using and surrender to us immediately any H&R Block signs and other marketing materials bearing the H&R Block name. Provide us with your written assurance that any H&R Block signs for your former H&R Block business can no longer be seen by the public.

You may have received through Nelsen H&R Block training materials and software used for preparing tax returns and keeping track of the financial results of your former H&R Block business. The software and training materials are proprietary to H&R Block and bear the H&R Block name. Therefore, we demand that you cease and desist from using such software and training materials and that you immediately surrender to us such materials and software, including any copies thereof.

Please respond to this letter within ten days from its date to make arrangements for complying with the demands set forth above. You may contact me at 816-932-8492 or Doug French, our franchise district manager, at 307-632-4724. We reserve the right to take further action in the event we do not receive a satisfactory response.

Sincerely,

Steven A. Christiansen

SAC/sw
c:      Ken Treat
        Bruce Johansson (via email)
        John Greenway (via email)
        Doug French (via email)
        Georgene Rowland (via email)